JUSTICE NELSON
dissenting.
In our rush to decide this case on an expedited basis we may well have made bad law on an issue of first impression. I did not join this Court’s July 30,1996 order for the reasons hereinafter set forth, and I now dissent from our decision.
At the outset, and while not the primary focus of my dissent, I find little comfort in our decision on Issue 1. Rule 5, M.R.Civ.P, clearly requires that copies of motions and supporting documents be served on the adverse party or, if represented, on his attorney. Whether Lovins, a pro se litigant in the trial court, preserved his objection or not, counsel’s[1] failure to serve him with the affidavits supporting a motion for summary judgment that was about to be heard by the court, cannot be simply rationalized away as easily as we do, especially where, according to Lovins’ affidavit, he was sitting in the hallway outside the courtroom and the clerk’s office when the affidavits were filed May 22,1996. While acknowledging that the affidavits of Allan J. Underdal and Gary M. Zadick were not served on Lovins, we excuse that breach of Rule 5, M.R.Civ.P., on the basis that the affidavit of Denis Freeland was filed with the County’s motion for *264 summary judgment on May 6, 1996, and therefore, presumably, was served on Lovins. Even assuming, arguendo, that Freeland’s affidavit was served on Lovins, Freeland’s affidavit addresses different matters than either Underdal’s or Zadick’s affidavits. Further, the 1996 bond resolution which figured into the County’s summary judgment argument was only attached to Underdal’s affidavit and was not otherwise a part of the record. The court’s reference to the 1996 bond resolution during oral argument did not cure counsel’s failure to comply with the clear mandate of Rule 5, M.R.Civ.R See e.g., Kenner v. Moran (1994), 263 Mont. 368, 376, 868 P.2d 620, 625, wherein we set aside the grant of summary judgment where the movant did not give the opposing pro se litigant the ten-day notice required under Rule 56(a), M.R.Civ.P.
Secondly, in view of my position on Issue 2, I would, likewise, vacate the District Court’s Rule 11, M.R.Civ.P., sanctions imposed against Lovins. There was no basis for sanctions. As we have concluded, Lovins’ second suit was not barred by res judicata or collateral estoppel. Moreover, on the merits, I believe that the District Court erred in granting summary judgment to the County. The fact that sanctions were imposed without a hearing serves further to emphasize the trial court’s error.
With that said, and with regard to the majority’s discussion of the bond issue, I submit that the trial court and, now, this Court have ruled on an issue that was never properly joined in the underlying litigation. Lovins’ 1996 suit against Toole County was to prevent the County from borrowing $1.7 million from the Montana Health Facility Authority (MHFA) pursuant to a notice published on April 25, 1996, wherein the MHFA stated its intention to issue $5.220 million in bonds under Title 90, Chapter 7, parts 1, 2 and 3, MCA, with the proceeds to fund, among other things, the loan to Toole County. Lovins contended that the County was prohibited by § 7-7-2402, MCA, from borrowing the $1.7 million without a vote of the electors. That is plainly all his suit was about.
In that respect, § 7-7-2402, MCA, is clear that, with two exceptions not at issue here, the board of county commissioners may not borrow money for any of the purposes mentioned in Title 7 of the Montana Code (which by definition includes the construction, furnishing, operation and maintenance of health care facilities, § 7-8-2102 and 7-34-2201, MCA, and boarding homes, § 7-34-2301, MCA) or for any single purpose in an amount exceeding $500,000 without first obtaining a favorable vote of the majority of electors of the county. If the *265 electors approve the loan, then the county can make the loan, “issuing bonds or otherwise....”
The District Court order granting summary judgment and our decision, however, focus not on § 7-7-2402, MCA, but on § 7-34-2411, MCA[2], and conclude that the provisions of that latter section along with §§ 7-6-2512(2) and 7-34-2414, MCA, obviate the necessity for any vote on the issuance of bonds by the County for the proposed addition to the Toole County Hospital.
The problem with this approach is that over the course of two different lawsuits the issue of the applicability and proper interpretation of §§ 7-34-2411, MCA, et. seq., regarding Toole County’s financing of its proposed hospital addition was never properly joined in Lovins’ litigation. Rather, in both Lovins’ 1995 and 1996 suits, the interpretations of §§ 7-34-2411, MCA, et. seq., which we uphold here, were inserted gratuitously, as dicta, by the district courts.
In his 1995 suit, Lovins sued to stop the County from unlawfully leasing the hospital facility, and he won on that issue. Lovins never sued to stop the County from issuing revenue bonds. Properly, we have concluded that the trial court’s subsequent opinion interpreting the HB 421 amendments was dictum.
Lovins’ 1996 suit was filed to stop the County from borrowing $1.7 million which MHFA was going to loan to Toole County from the proceeds of the bonds it (MHFA) was going to issue. Lovins simply contended that § 7-7-2402, MCA, prohibited that loan without a vote. The proposal described in the notice attached to Lovins’ 1996 complaint did not address Toole County issuing revenue bonds under §§ 7-34-2411, et. seq. Rather, that notice involved MHFA issuing bonds under authority of a completely different Title and Chapter of the Montana Code and its then loaning $1.7 million to Toole County. How Toole County was going to secure or pay for that loan was not the issue raised in Lovins’ 1996 suit.
Moreover, the County’s primary defense of the 1996 suit was that Lovins’ action was barred by the res judicata and collateral estoppel effect of the District Court’s 1995 opinion — the same opinion which we have now concluded was dictum. In line with that defense the District Court granted summary judgment on the basis of res judicata and collateral estoppel. The court could have and should have simply stopped at that point. However, committing the same mistake as did the trial court in the 1995 suit, the District Court similarly went *266 farther and gratuitously added a one paragraph ruling on the applicability of the HB 421 amendments. If the trial court’s opinion on the HB 421 amendments was dictum in the 1995 suit, then on the same rationale, the District Court’s ruling on that same issue in the 1996 suit should be dictum as well. In neither the 1995 nor the 1996 suit was the court’s ruling on the HB 421 amendments essential to dispose of Lovins’ complaints.
We have now brought this error full circle. We have issued a substantive opinion on a legal question that was addressed as nothing more than dicta in two different district court decisions. As a consequence, I suggest that our decision is of little precedential value. The courts have saved Toole County’s hospital addition and have allowed the Comity to borrow the $1.7 million from MHFA. However, the courts have accomplished that at the expense of what may very well be the flawed interpretation of statutes not at issue and, perhaps, the loss of the right of the electors of Toole County — who, if experience is any teacher, may likely have to pick up the tab at some point in time — to vote on this important issue. So much for “expedited” decisions. I can only hope that before bond counsel in some future offering relies on our decision here, this whole issue will be thoroughly reexamined and, if necessary, re-litigated.
As to the merits of our decision on Issue 2, Lovins, who on appeal is represented by counsel, has advanced well-reasoned, legitimate arguments that are not analyzed in our opinion. Lovins contends that the 1995 amendments to §§ 7-6-2512(2), 7-34-2411, and 7-34-2414, MCA, contained in HB 421 do not address county election requirements for borrowing. Rather, Lovins maintains that language in those sections underscored in the majority opinion refers to the limitations on the amount of bonded indebtedness to which a county may obligate itself under § 7-7-2203, MCA, and similarly worded statutes but does not purport to exempt such bonds from the limitation on county indebtedness set forth in § 7-7-2101, MCA. Moreover, Lovins argues that the amendments do not make any reference to the requirement of § 7-7-2402, MCA, referred to above.
Lovins concludes that reading together the various statutes, including § 7-6-2512(2), MCA, demonstrates two different election requirements for county projects. If a health care facility bond issue is to be supported or financed by general tax support, then § 7-6-2512(2), MCA, requires an election regardless of the size of the bond obligation. On the other hand, any loan to a county exceeding $500,000 for a single purpose requires a vote of the electors pursuant *267 to § 7-7-2402, MCA, whether or not bonds are issued to finance the project. Neither election scheme is dependent upon or related to the other. Lovins maintains there is nothing in HB 421 that indicates that the general requirement for election approval of county loans exceeding $500,000 was contemplated in that Act.
Given the cursory manner in which we have treated this complicated issue, I do not know who is correct. I am not, however, persuaded by anything that I have read in the briefs or in our decision that Lovins may not well be right. That aside, and more importantly, we err in attempting to interpret, as a matter of first impression, statutory language where the statutes involved were never properly at issue in the trial court. I am all the more concerned with that error because the precedential effect of our decision will sanction local governments to incur literally millions of dollars of debt, without a vote, where, arguably, there is a statutory requirement for an election.
I dissent.
JUSTICE GRAY joins in the foregoing dissent.

. The County’s counsel on appeal is not the same counsel that represented the County-before the trial court.

. All statutory references are to the 1995 version of the Montana Code Annotated.